Filed 9/6/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| In re V.C. et al., Persons Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>John C. et al.,<br><br>　　　Defendants and Appellants. | A166527<br><br>(Alameda County<br>Super. Ct. Nos. JD03188201,<br>JD03191801) |

　　　In a previous appeal in these dependency proceedings with respect to V.C. and Z.C., we reversed the juvenile court's order terminating the parental rights of John C. (father) and Vanity L. (mother) (together, parents) and remanded for a new Welfare and Institutions Code[1] section 366.26 hearing to consider the beneficial relationship exception under *In re Caden C.* (2021) 11 Cal.5th 614 (*Caden C.*).  On remand, the juvenile court again terminated parental rights.  Both parents, each represented by separate counsel, have again appealed, both arguing that respondent Alameda County Social Services Agency (the agency) failed to comply with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) by not asking available extended family members about the children's possible Indian ancestry.  We agree, and

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

conditionally reverse and remand for the agency to conduct the appropriate ICWA inquiry.

## BACKGROUND

A more detailed recitation of the facts of these dependency proceedings is contained in our prior unpublished opinion, *In re V.C.* (Feb. 22, 2022, A163417) [nonpub. opn.]. We set forth only the facts relevant to the ICWA issue raised on appeal.

On December 2, 2019, the agency filed a petition pursuant to section 300, subdivisions (b)(1) and (j) regarding infant boy V.C., born that November. Among other allegations, the petition included that mother tested positive for methamphetamine at V.C.'s birth, resulting in V.C. experiencing withdrawal symptoms. A similar petition was filed with respect to Z.C on December 11. According to detention reports filed shortly thereafter, V.C. was placed in protective custody on November 17, and a search and seizure warrant with respect to Z.C. was signed on November 26 and served on December 9, on which date Z.C. was taken into protective custody.

According to the Indian Child Inquiry Attachment form attached to the petitions, each child "has no known Indian ancestry," and on November 25, 2019, a social worker spoke with both parents, who each "denied any Native American ancestry."

On December 3, both parents completed and filed "Parental Notification of Indian Status" forms, checking the box to indicate "I have no Indian ancestry as far as I know," and signing the form under penalty of perjury.

On March 9, 2020, the juvenile court held combined jurisdiction and disposition hearings with respect to both V.C. and Z.C. The court found the allegations of the petitions true, declared the children dependents, removed

2

them from parental custody, and ordered reunification services. Based on the Parental Notification of Indian Status forms, the court concluded that each child "is not an Indian child and no further notice is required under ICWA."

On February 22, 2021, a combined six-month and 12-month review hearing was held at which the court terminated reunification services, set a section 366.26 hearing, and again concluded that ICWA did not apply to the children.

A section 366.26 hearing was held on June 30, July 12, and August 4, 2021, at which hearing the court concluded that the beneficial relationship exception to the termination of parental rights did not apply and terminated parental rights, with adoption identified as the children's permanent plan. The court again found "ICWA does not apply."

On August 16, mother filed a notice of appeal.

On February 22, 2022, we reversed the termination of parental rights, and remanded for the juvenile court to conduct a new section 366.26 hearing consistent with the standards set forth for application of the beneficial relationship exception in *Caden C.*, *supra*, 11 Cal.5th 614. (*In re V.C.* (Feb. 22, 2022, A163417) [nonpub. opn.].)

On October 5, a new section 366.26 hearing was held, at which hearing the juvenile court again terminated parental rights, found "ICWA does not apply in this matter," and identified adoption as the children's permanent plan.

Both parents filed notices of appeal. [2]

---

[2] On July 26, 2023, after this appeal was fully briefed, mother filed an unopposed motion to take additional evidence on appeal pursuant to Code of Civil Procedure section 909 and California Rules of Court, rule 8.252(c), attaching a short declaration stating the she has "heard through my family over the years that I am Native American through both sides of my family,"

3

# DISCUSSION

Parents' only argument is that agency failed to comply with ICWA because it was required to, but did not, ask "extended family members" about the children's potential Indian ancestry.[3]

**Applicable Law**

Parents' argument is based on section 224.2, which provides:

"(a) The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300, 601, or 602 may be or has been filed, is or may be an Indian child. The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.

"(b) If a child is placed into the temporary custody of a county welfare department pursuant to Section 306[4] or county probation department

---

including through her mother's cousin, mother's nephews, and paternal grandfather, and stating that father also has Native American ancestry though his maternal grandmother.

[3] Because of the continuing duty imposed by ICWA and related state law to inquire whether a child is an Indian child (*In re Isaiah W.* (2016) 1 Cal.5th 1, 10–11), our Supreme Court has held that a parent may challenge a finding that ICWA is inapplicable in an appeal from a subsequent order, even though the parent did not raise that issue in the trial court or in an appeal from a previous order (*id.* at p. 6).

[4] Section 306 provides:

"(a) Any social worker in a county welfare department, or in an Indian tribe that has entered into an agreement pursuant to Section 10553.1 while acting within the scope of his or her regular duties under the direction of the juvenile court and pursuant to subdivision (b) of Section 272, may do all of the following:

4

pursuant to Section 307, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.

"(c) At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."

**The ICWA Duty to Inquire of Extended Family Members Applies Here**

As noted, Z.C. was placed into protective custody pursuant to a search and seizure warrant signed on November 26 and served on December 9. The

---

"(1) Receive and maintain, pending investigation, temporary custody of a child who is described in Section 300, and who has been delivered by a peace officer.

"(2) Take into and maintain temporary custody of, without a warrant, a child who has been declared a dependent child of the juvenile court under Section 300 or who the social worker has reasonable cause to believe is a person described in subdivision (b) or (g) of Section 300, and the social worker has reasonable cause to believe that the child has an immediate need for medical care or is in immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety.

"(b) Upon receiving temporary custody of a child, the county welfare department shall inquire pursuant to Section 224.2, whether the child is an Indian child."

5

petition for Z.C. was filed on December 11. V.C. was placed into protective custody on November 26. A petition for V.C. was filed on December 2. Thus, both children were presumably taken into protective custody pursuant to section 340, subdivision (b).[5]

Focusing on the introductory language in section 224.2, subdivision (b)—"If a child is placed into the temporary custody of a county welfare department pursuant to Section 306"—the agency argues that because the minors were not placed into the temporary custody of the agency without a warrant pursuant to section 306, the agency was not required by

_____

[5] Section 340 provides in relevant part: "(a) Whenever a petition has been filed in the juvenile court alleging that a minor comes within Section 300 and praying for a hearing on that petition, or whenever any subsequent petition has been filed praying for a hearing in the matter of the minor and it appears to the court that the circumstances of his or her home environment may endanger the health, person, or welfare of the minor, or whenever a dependent minor has run away from his or her court-ordered placement, a protective custody warrant may be issued immediately for the minor.

"(b) A protective custody warrant may be issued without filing a petition under Section 300 if the court finds probable cause to support all of the following:

"(1) The child is a person described in Section 300.

"(2) There is a substantial danger to the safety or to the physical or emotional health of the child.

"(3) There are no reasonable means to protect the child's safety or physical health without removal.

"(c) Any child taken into protective custody pursuant to this section shall immediately be delivered to the social worker who shall investigate, pursuant to Section 309, the facts and circumstances of the child and the facts surrounding the child being taken into custody and attempt to maintain the child with the child's family through the provision of services."

6

subdivision (b) to make an initial ICWA inquiry of "extended family members."

This language that begins section 224.2, subdivision (b) was addressed in *In re Adrian L.* (2022) 86 Cal.App.5th 342 (*Adrian L.*), where the Second District Court of Appeal found a failure to make ICWA inquiry of extended family members harmless. (*Id.* at pp. 349–353.) In a concurring opinion, Judge Kelley of the Los Angeles Superior Court, sitting by assignment, explained that based on the language that begins subdivision (b) of section 224.2, he would have concluded that the agency did not have a duty to make inquiry of extended family members at all. This was his explanation:

"Despite the large number of recent appeals based on DCFS's failure to make inquiries of 'extended family members,' no case appears to have confronted the question of why the prefatory clause in section 224.2, subdivision (b) should be interpreted as meaning something other than what it plainly says—that the inquiry obligation expressed in this subdivision is triggered when the child is 'placed into the temporary custody of a county welfare department pursuant to [s]ection 306.' (*Ibid.*) [¶] . . . [¶]

"Placing a child into 'temporary custody of a county welfare department pursuant to [section] 306' is fundamentally different from taking a child into 'protective custody' under section 340. Beyond the obvious feature that one process requires a court order, and the other does not, these provisions are found in entirely different articles of the juvenile law. The two provisions also have different standards that must be met to justify removal. Section 306 requires 'imminent physical damage or harm' before a child may be removed without a warrant (*id.*, subd. (c)), but section 340 does not have such a strict standard (*id.*, subds. (a), (b)). Under section 340, a court may issue a warrant without a prior filing of a section 300 petition where '[t]here is a

7

substantial danger to the safety or to the physical *or emotional health* of the child.' (§340, subd. (b)(2), italics added.) It thus requires neither imminent nor physical harm. As discussed, *post*, this difference is significant under federal ICWA law because a removal under section 306 is considered an 'emergency removal' under ICWA, but a removal pursuant to an order issued under section 340 is not. This distinction illuminates why the legislative choice to limit the scope of section 224.2, subdivision (b) to situations where a child is placed in temporary custody of a county welfare agency pursuant to section 306 aligns it with federal ICWA guidance." (*Adrian L.*, *supra*, at pp. 356–357, fns. omitted (conc. opn. of Kelley, J.).)

Two recent decisions from Division Two of the Fourth District Court of Appeal adopted the reasoning of Judge Kelley's concurring opinion, holding that the duty to inquire of "extended family members" is not triggered when the children are taken into protective custody with a warrant pursuant to section 340, but only if the children are taken into temporary custody under section 306: *In re Robert F.* (2023) 90 Cal.App.5th 492, 500–504 (*Robert F.*) and *In re Ja. O.* (2023) 91 Cal.App.5th 672, 677–678 (*Ja. O.*). On July 26, 2023, our Supreme Court granted review in both cases. (See *In re Ja. O.* (July 26, 2023, S280572); *In re Robert F.* (July 26, 2023, S279743; review granted and held for *Ja. O.*)

Both parents appear to accept the premise that inquiry of "extended family members" is required only where the "child is placed into the temporary custody of a county welfare department pursuant to Section 306," and argue that the children were placed into such temporary custody. We are not persuaded to accept the parties' premise, however, because we do not agree that the language of section 224.2, subdivision (b) plainly limits the inquiry described to situations where the children have been taken into

8

"temporary custody" pursuant to section 306—as held by a case from Division Two of the Fourth District that declined to follow the holdings of their colleagues in *Robert F.* and *Ja. O.*

On July 21, 2023, after briefing in this appeal was completed, Division Two of the Fourth District filed *In re Delila D.* (2023) 93 Cal.App.5th 953 (*Delila D.*). There, in a 2–1 opinion, Justices Slough and Raphael declined to follow *Robert F.* and *Ja. O.*, and instead concluded "there is only one duty of initial inquiry, and that duty encompasses available extended family members no matter how the child is initially removed from home." (*Id.* at p. 962.) Because "the way a child is initially removed from home has no bearing on the question of whether they may be an Indian child," *Delila D.* concluded that "[t]he holding of *Robert F.* is, in our view, contrary to both the letter and spirit of Assembly Bill [No.] 3176," the legislation enacting section 224.2. (*Delia D.*, *supra*, 93 Cal.App.5th at p. 962.) Their reasoning was as follows:

"Even if [*Robert F.*'s] conclusion that section 306 excludes removals by protective custody warrant were correct, we would still disagree with its conclusion that the duty described in section 224.2(b) does not apply once a child initially removed by warrant is removed from parental custody at the disposition hearing.

"First, section 224.2(b) does not state that the inquiry it describes applies 'only if' a child is taken into temporary custody under section 306. (See *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 827 [it is a 'cardinal rule' of statutory interpretation that 'courts may not add provisions to a statute'].) Section 224.2(b) does not contain the word only or any other language suggesting an intent to limit the inquiry it describes. And where, as here, where [*sic*] remedial legislation is involved, we must interpret the statute

9

broadly to achieve its purpose. (See *In re I.F.* (2022) 77 Cal.App.5th 152, 163 [the affirmative and ongoing duty to inquire under California law serves a 'remedial purpose' requiring us to broadly construe state ICWA statutes]; see also *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1107 [courts must construe statutory provisions 'in context, keeping in mind the statute's nature and *obvious purposes*' (italics added)].)

"Here, the obvious purpose of Assembly Bill [No.] 3176 was to expand the scope of the initial inquiry beyond the parents. Nothing in the text of that amendment or its legislative history suggests an intent to apply the expanded inquiry in some cases but not others. Indeed, Assembly Bill [No.] 3176 itself states that it amends existing law to 'revise the specific steps a social worker . . . is required to take in making an inquiry of a child's possible status as an Indian child.' [(Stats. 2018, ch. 833 (Assembly Bill No. 3176), § 5.)] Notably, the Legislature did not say those steps apply only in the subset of dependency proceedings that begin with warrantless removals. We think that if the Legislature intended to so limit the initial inquiry, it would have said so.

"Second, [California Rules of Court,] rule 5.481 requires social workers to make the inquiry described in section 224.2(b) any time the department is 'seeking a foster-care placement, . . . termination of parental rights, preadoptive placement, or adoption.' ([See] rule 5.481(a)(1) [directing the department, in such circumstances, to ask 'extended family members [and] others who have an interest in the child' about possible Indian ancestry].) Where, as here, the rule is not inconsistent with the statute, we are required to follow it. (See *R.R. v. Superior Court* (2009) 180 Cal.App.4th 185, 205 ['Rules of court have the force of law and are as binding as procedural

statutes as long as they are not inconsistent with statutory or constitutional law']; see also [*In re*] *T.G.* [(2020)] 58 Cal.App.5th [275,] 291 [concluding rule 5.481 is 'entitled to judicial deference'].)

"Third and perhaps most importantly, it simply doesn't make sense to apply different initial inquiries depending on how the child was initially removed from home, as that procedural happenstance has nothing to do with a child's ancestry.

"For all these reasons, we conclude *Robert F.*'s interpretation of section 224.2(b) as 'crafting [a] narrow inquiry duty' that applies only to children initially taken into temporary custody without a warrant contravenes the plain language and obvious purpose of Assembly Bill [No.] 3176. (*Robert F.*, *supra*, 90 Cal.App.5th at p. 503.) We hold instead that the Legislature enacted section 224.2(b) to impose on departments a *broad* duty to inquire that applies regardless of how a child is initially removed from home." (*Delila D.*, *supra*, 93 Cal.App.5th at pp. 974–975.)[6]

Following supplemental briefing from the parties on *Delila D.*, we write to express agreement with *Delila D.* on this point, holding that the duty to make ICWA inquiry of "extended family members" applies even if the children here were not taken into "temporary custody" pursuant to section 306.

We thus turn to the issue of prejudice.

**The ICWA Error Was Not Harmless**

The appellate courts are divided on what showing of prejudice warrants reversal for ICWA inquiry errors, the varying standards for prejudice including these four: (1) deficient inquiry necessarily infects the juvenile

---

[6] Justice Douglas Miller, who had been on the panel in *Robert F.*, dissented.

11

court's ruling and reversal is automatic and required ("automatic reversal rule") (See, e.g., *In re G.H.* (2022) 84 Cal.App.5th 15, 32; *In re A.R.* (2022) 77 Cal.App.5th 197, 207; *In re J.C.* (2022) 77 Cal.App.5th 70, 80; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 432–437 (*Antonio R.*); *In re Y.W.* (2021) 70 Cal.App.5th 542, 556 (*Y.W.*)); (2) deficient inquiry is harmless unless the record below demonstrates, or the parent on appeal makes an offer of proof or other affirmative assertion of, Indian heritage ("presumptive affirmance rule") (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069); (3) a deficient inquiry requires reversal where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744 (*Benjamin M.*)); and (4) deficient inquiry is harmless unless the record contains information suggesting a "reason to believe" the child is an Indian child (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578 (*Dezi C.*)).

We weigh in on the issue, and begin by noting that we join with the many other courts that have declined to apply the presumptive affirmance rule, which has been rightly criticized. (See *In re K.H.* (2022) 84 Cal.App.5th 566, 612–614, citing *In re Y.M.* (2022) 82 Cal.App.5th 901, 913–915; *Dezi C.*, *supra*, 79 Cal.App.5th at pp. 777–778; *Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 743–744.) As explained in *In re K.H.*, a presumptive affirmance rule requiring a parent to demonstrate evidence in the record or make an offer on appeal regarding possible Indian heritage would routinize consideration of new evidence on appeal, which is generally disfavored. It would also shift the burden of investigation onto parents in dependency proceedings and, moreover, disregard the interests of the Native American tribes, because prejudicially deficient inquiries will go uncorrected if an appealing parent is

unwilling or unable to make a meaningful proffer on appeal. (See *In re K.H.*, *supra,* 84 Cal.App.5th at pp. 612–614 [and cases cited].)

We also decline to adopt the "reason to believe" approach in *Dezi C.* In deeming an agency's failure to conduct a proper inquiry into a dependent's Indian ancestry to be harmless unless the "record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA," (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779), the rule in *Dezi C.* shifts the duty of developing information on Indian ancestry from the agency to the parents. (See *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 743 ["Requiring a parent to prove that the missing information would have demonstrated 'reason to believe' would effectively impose a duty on that parent to search for evidence that the Legislature has imposed on only the agency"].)

Additionally, section 224.2, subdivision (b) requires inquiry of more than just the parents in order "to obtain information the parent may not have" (*Y.W.*, *supra*, 70 Cal.App.5th at p. 556), or who perhaps lack the relevant information or possess only vague or ambiguous information. (*Antonio R.*, *supra*, 76 Cal.App.5th at p. 432 [noting reasons why parent might incorrectly report no American Indian ancestry]; see generally *In re T.G.* (2020) 58 Cal.App.5th 275, 289; *In re S.R.* (2021) 64 Cal.App.5th 303, 315–316.)

We adopt the standard of *Benjamin M.*: A finding that ICWA does not apply cannot stand "where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) And, we conclude, reversal is required under this

13

standard, because the record reveals numerous extended family members who may have had information regarding the children's potential Indian ancestry. For example, the December 12, 2019 detention report indicated that according to mother, her great uncle was "at [the] home with her and her family," and the December 23 jurisdiction and disposition report indicated that parents identified the great uncle as one of their "support people." And according to notes from the Alameda Health System dated December 6, 2019, mother stated that she had stable housing at the maternal grandfather's house and provided the address, adding that the maternal grandmother and great uncle were "currently providing care" to the maternal grandfather. The children were initially placed with the maternal second cousin, who later became the prospective adoptive parent. On January 19, 2021, the agency reported that at the home of the maternal second cousin, the children "get to see their maternal aunt as well as other cousins and other extended family members." The agency does not contend that it could not have contacted any of these extended family members to ask about Indian ancestry, or that it made any attempt to do so.

In addition, as noted, mother has filed a motion to take additional evidence on appeal, attaching her declaration stating that she has "heard through my family over the years that I am Native American through both sides of my family," including through her mother's cousin, mother's nephews, and paternal grandfather, and stating that father also has Native American ancestry though his maternal grandmother. We grant this motion for the limited purpose of considering the issue of prejudice. (See *Dezi C.*, *supra*, 79 Cal.App.5th at p. 779 & fn. 4 [considering proffers by the appealing parent is appropriate in assessing prejudice under ICWA].) Mother's proffer further supports our conclusion that the record here "indicates that there was

14

readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

## DISPOSITION

The order terminating parental rights is conditionally reversed. The matter is remanded with directions for the juvenile court to order the agency to comply with the duty of initial ICWA inquiry (§ 224.2, subd. (b)) as to available extended family members and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the pertinent tribes (§ 224.3, subd. (a)). If the court determines ICWA does not apply, then it shall immediately reinstate the order terminating parental rights. If the court finds that ICWA applies, the court shall proceed in conformity with ICWA and related California law. The court shall enter its findings on the record as to whether ICWA applies and whether the agency complied with its duties under the law.

_____
Richman, J.

We concur:

_____
Stewart, P.J.

_____
Miller, J.

*In re V.C.* (A166527)

16

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Honorable Ursula Jones Dickson; |
| Attorney for Plaintiff and Respondent, Alameda County Social Services Agency: | Office of the County Counsel, County of Alameda; Donna R. Ziegler, County Counsel, Samantha Stonework-Hand, Senior Deputy County Counsel, Josephine Miller Williams, Associate County Counsel; |
| Attorney for Defendant and Appellant, John C.: | Christopher R. Booth, under appointment by the Court of Appeal; |
| Attorney for Defendant and Appellant Vanity L.: | Gorman Law Office; Seth F. Gorman, under appointment by the Court of Appeal. |

17